The Chief Justice
delivered the Opinion of the Court.
Elizabeth Boyce, who was entitled, under the will of her deceased husband, to an undivided portion of his estate, being about to intermarry with Gerard McKinney, who was then insolvent, made to Henry Clay and Thomas Bodley, on the 15th of August, 1812, a conveyance of all her said estate, in trust, for securing to herself and her intended husband, (whom she afterwards married,) and to the survivor, the use during life; and after their deaths, to convey the remainder to whomsoever the survivor should appoint by last will or other instrument of writing; and “in default of such appointment, then to the issue of the intended marriage; and in default of such issue, then, to the children of both parties, to wit. the said Elizabeth and the said Gerard, in fee forever. ”
Afterwards, upon a partition of her first husband’s estate, Mrs, McKinney received as her portion, three slaves, *479 Tom, Bob and Cate, and about twenty four hundred dollars in money. Cate after she had borne a son (Harry,) was exchanged for another slave (Lucy.)
On the 9th of April, 1827, McKinney and wife, conveyed to Clay and Bodley, the foregoing slaves, and others, to wit. Fanny, Sarah and Rachel, children of Lucy, born since she had been substituted for Cate; and also, Joe, Harrison and Mary, and some articles of household furniture, and other inconsiderable personal property.
This deed, refering to the trust created by that of 1812, and reciting that the slaves Joe, Harrison and Mary and the described articles of personalty had been bought with the money received under Boyce’s will, conveyed all the said property in trust for the purposes expressed in the deed of 1812, and purported to execute jointly what was recited as a joint power, by directing the trustees to convey the estate to their children born since their intermarriage.
On the 10th of April, 1827, McKinney and wife, also, mortgaged to John H. Morton, other property, to secure the payment of certain debts, and indemnify himself and others as their surities.
Afterwards, William S. Waller, who had a judgment against Gerard McKinney as surity for John T. Mason, had a fieri facias levied on the property embraced in those conveyances. And to enjoin any sale under that levy, and to obtain other relief, one Daniel Boyce and Mrs. McKinney and the children who were the appointees filed a bill in chancery against Waller and John H. Morton, and Gerard McKinney — the said Daniel Boyce asserting a right to said McKinney’s interest in all the property as a purchaser thereof, under sundry executions against him, and therefore praying specially for a foreclosure of the mortgage to Morton; and the other complainants praying for a decree perpetually enjoining a sale of any of the property embraced in the deed of the 9th of April, 1827, and requiring the trustees to convey to the appointees the legal title.
Waller resisted the injunction; and on the final hearing, the Circuit Judge dismissed the bill absolutely.
In revising that decree we shall not deem it necessary to consider all the points discussed in the argument, or *480 which may he involved in the record; but will confine our attention to such only as are essential to the decision of the question of right between the parties.
The possession or right of possession, acquired by a purchaser of personal property sold under ex'on, will enable him to assert a legal remedy against one who converts it, by another sale under a subsequent ex’on; and a court of eq. will not en join such sale But-
The purchaser of an equity of redemption in personality may maintain a bill to have the equity of redemption adjusted, and may obtain an injunction to prevent a sale of the property in the meantime. And—
Children having a residuary interest in slaves &c. under a deed of trust-a right purely equitable, may maintain a bill eq. to perfect their right.
The grounds on which it is contended that M. one of the cestui que trusts became absolute owner, so that the trust property, was subject to an ex'on against him.
If Daniel Boyce acquired any available right by his Purchase of McKinney’s interest in the estate conveyed to Clay and Bodley, the possession which he acquired, or to which he was entitled, would have enabled him to maintain a legal remedy against Waller, for any wrongful conversion; and there being no suggestion that such á remedy would be inadequate, the bill does not exhibit a case in which, at his instance, a court of equity had jurisdiction to enjoin a sale of that property under Waller’s execution. And therefore, as to that, the absolute dismission does not appear to have been erroneous; and the decree will not affect his right if he ever had any.
Pie had, however, a right to file his bill for adjusting the equity of redemption which he purchased in the property mortgaged to Morton; and having brought his suit for that purpose, he had a right to enjoin the sale of the mortgaged property by Waller, until a final decree shall have disposed of that equity. Though therefore, he had omitted to make all the persons beneficially interested in the mortgage parties, it was erroneous to dismiss his bill absolutely, as to this matter.
As the right of the children who claim under the deeds of 1812 and 1827, is purely equitable, the Court had jurisdiction to perfect that right, by such a decree as is sotight by them in this case, and to enjoin the sale in the mean time, of the property claimed by them.
During the pendency of the suit in the Court below, McKinney and his wife both died, he having survived, her.
And now the Counsel for Waller insists — (1) that the power granted m the deed of 1812, was general and unqualified; (2) that such a general power vested the absolute title in McKinney, if he elected to exercise ownership; by executing the power; (3) that ho did effectually execute the power; (4) that, being absolute owner of the property, as evinced by his making a disposition of it, his appointment was fraudulent and void, so far as his judgment creditors may be concerned; and (5) that, if *481 the appointees can hold as against Waller, still there is no sufficient proof that they are entitled to any other property than the slaves which came to Mrs. McKinney from her first husband.
Qu. whether the power, in this case, is general i. e., an authority to the done to appoint to whom soever he may choose; or particular, i.e., a right restricted to certain objects designated in the grant itself. If the conveyance was not a settlement, but only articles for a settlement, the power was not general. For-
Marriage articles are always understood in equity, as being ultimately for the benefit of children, when there is nothing to indecate the contrary
It seems to be settled in England, that a general power of appointment given to a donee who had an individual right to the property, does in effect entitle the donee to absolute ownership. But if the grant designates who shall take the property in default of appointment, the creditors of the donee cannot claim it as his, until he has in some way assumed the right of disposing of it; and that a voluntary execution of the power by the donee—which implies ownership, is generally deemed a fraud on his creditors. And this doctrine has been virtually recognized by the Legislature of this state.
The counsel for the appellants controverts most of those propositions; and authorities, apparently conflicting, have been cited in support of the argument on each side.
A general power, being an authority to the donee to appoint whomsoever he may choose; and a particular power being a right restricted to certain objects designated 'in the grant itself, there may be some doubt whether the power in this case was intended to be general or particular. If the contract of 1812 should be interpreted, not as an executed settlement, but as mere articles for a settlement by some future conveyance,, there Should be no doubt that the power of appointment was not general, but was restricted to the children of McKinney and wife; for, in the absence of any provision clearly indicating the contrary, marriage articles are always understood in equity, as being intended ultimately for the benefit of children.
And though we are of 1812 as a settlement, and to doubt the conclusive application of Bristow vs Ward (2 Vesey Jr. 335,) to such a conveyance, even when, as in this case, certain children are to take in default of any appointment; yet, nevertheless we are not perfectly certain that a could of equity should not presume, from the whole tenor of the Contract, that the power Was intended to be restricted to an appointment among the children. But a decision on this point is not necessary; for if the power be admitted to be clearly general, we are of the opinion that the children of the marriage have not been prejudiced by the attempted execution in the deed of 1827.
It seems to have been settled in England, that a general power of appointment, given by a donor who had an *482 individual right to the property, is considered as having the constructive effect of entitling the donee to the absolute ownership, for as he may appoint to himself, or to any other person, either voluntarily or for a valuable consideration, his right may be equivalent to the absolute dominion and beneficial enjoyment. But when the grant devolves the estate on a designated person or persons, in default of art appointment by the donee of such a power, his creditors cannot claim the property as his, until he shall have manifested an election to exercise dominion over it, by executing the appointment, or otherwis assuming the jus disponendi, And it has been also settled in England, that a voluntary execution of the power of appointment, Which will be sufficient to imply ownership by the donee should be generally deemed a fraud on his creditors. Hinton et al. vs Toy et al. 1 Atk. 465; Bainton et al. vs Ward, 2 Ib. 172; Pack et al. vs Bathurst, 3 Ib. 269; Holmes vs Coghill, 7 Vesey, 498; Lassells vs Cornwallis, 2 Vern. 465; Jenny et al vs Andrews et al. 6 Maddock’s Rep. 164; Roberts on Fraud. Con. and Sugden on Pow. passim. And this judicial doctrine has been virtually recognized by the Legislature' of this State, in that provision iii the statute against fraudulent devises, which makes every voluntary execution of a general power of appointment by will, fraudulent as to the creditors of the donee of the power, unless they or some of them be the appointees,
Where property is conveyed in trust for the use of husband & wife during their joint lives, then to the survivor for life with a power of appointment given to the survivor-it seems that an appointment by a joint deed of the husband and wife, would not be a valid execution of the the power, especially if the wife survived the husband, though possibly it might if the husband survived.
But, in McAdam vs Logan (3 Bro. Chy. Rep. 309,) Lord Thurlow decided that a power of appointment given to the survivor of two designated persons', was not executed by a joint appointment made by both of them. And though Mr. Sugden questions that decision, on the authority of the case of the Countess of Sutherland vs Northmore (1 Dick, 56,) yet it was recognized expressly by Lord Ellenborough, in the case of Doe vs Tompkinson, (2. M. & S. 165,) and virtually by Lord Redesdale in the case of Bushell vs Bushell, (1. Scho. & Sef. 96.) There may be perhaps an important distinction, as suggested by Lord Ellenborough, between a power to be executed by a designated person on a contingent event, and a power to be executed by a contingent person. Had the wife' *483 survived in. this case, we should have had no doubt that the power of appointment had not been executed by the joint deed of 1827; because, by surviving her husband, she alone would have had the right to appoint, and her joint act sub potestate viris, was ineffectual. And we are not sure that the survivorship of the husband should make any essential difference as to the question of a valid execution of the power by the survivor. The appointment being joint, may not have been precisely such as he alone, uninfluenced by the wishes or solicitations of his wife, would have made after her death, And besides, it appears from the deed of appointment itself, that ho supposed that the power was joint and would hot survive; and therefore he never executed the power as belonging to himself alone as survivor, and might never have made the joint appointment, or any appointment at all, had he known that the survivor alone had the right to appoint.
Where, in such case, the property was to go to the children of the first beneficiaries, in default of appointment, and they under took to exercise the power by their joint deed, by which they directed that the property should be conveyed to their children, (who would have been entitled if the power had not been exercised:) held that this attempt to exercise the power did not manifest an assumed ownership, or intention on the part of the husband to exercise dominion over the property, and the deed cannot be deemed a voluntary conveyance in fraud of his creditors: the property not subject to an ex'on against him.
But however this may be, or whatever may be the true doctrine as to the effect of a joint appointment when the power belongs to the survivor, (and as to which we will not now express a conclusive opinion,) it seems to us that, if the appointment, as made in this case, should be deemed an effectual execution of the power, still it was not such an act as manifested ownership by McKinney, or an intention to exercise any dominion over property. We have seen no case in which it was ever held that, the execution of a general power by appointing the person or persons who would be entitled under the grant, in default of execution, should be deemed fraudulent as to the creditors of the donee of the power. And such a doctrine would be a perversion, or rather an ultra application, of the principle of the case which have been cited, and of all other adjudged cases on the same subject. Had there been no attempt at any appointment in this case, the very persons to whom the appointment was made, would have taken precisely the same interests under an express grant to that effect in the deed creating the power.
Do they not, therefore, (like heirs to whom the same interest which they would have inherited, had been devised,) held under the deed of 1812, independently of the *484 power, or the execution of it, precisely as they would have held had there been no attempt at execution? If the power b.e general, then, of course, it could be execute ed only by appointing to some other than the children to whom the estate was given by the deed in the event of non-execution; because, for any other purpose, or in any other sense, it was altogether superfluous and lifeless. And if the power can be executed by appointing the children, this would prove that it was a particular and not a general power; because, as they would have taken without any appointment, a power to appoint to them must be understood as given for no other purpose than that of controlling the manner of distribution among them. And these deductions are rather fortified by Mildmay’s case, 1. Co. R. 175, a.
Moreover, when McKinney united with his wife in directing the trustees to convey to the children the interests to which they would have been entitled without any execution of the power, he waived all ownership for himself, and manifested a determination not to defeat the contingent remainder in them, by executing the power; for he thereby surrendered all right he might have had to appropriate the estate to his own benefit, or to make any other disposition of it than that which was made by the deed of 1812, in the event of his electing, as he did, not to execute, as he might, the power delegated to the survivor, It would be strange if those children, who can have derived no benefit from the joint appointment, should be. prejudiced by it; and that the creditors of their father, who would have no right to pursue the property in their hands, had there been no such nominal appointment, may now take it from them, when they are entitled to it independently of the empty execution of the power. And this conclusion, if it be not self-evident, may derive support from the reasoning of the Lord Chancellor, in the case of Bristow vs Ward, (supra.)
We are, therefore, satisfied that, whether the power be deemed general or only special, Waller has no right to subject any portion of the property, or of the increase of the property, embraced in the deed of 1812, or any property acquired by the proceeds, of that trust estate,
Husband & wife, for whose use during the lives of both and of the survivor,the wife had conveyed property in trust, were allowed, by the terms of the deed, to use the property without accountability, tho’ their children wo’d be entitled to it, by the deed, if a power of appointment reserved to the survivor, wa snot exercised. The husband and wife received a large portion of the estate in money, which they used and consumed; and tho’ this was no exercise of the power of appointment; yet, as the children could not recover the property so consumed, their claim to it could not be considered as a valuable consideration for a conveyance made by the husband, to them, or for their benefit.
Recital of facts held sufficient to show that a voluntary deed (supra) was made to defeat creditors, & the property conveyed therefore subject to an ex’on against the grantor.
But there is no satisfactory proof, that the three slaves, Joe, Harrison and Mary, and the articles of personal property embraced in the deed of 1827, were purchased with the proceeds of the estate, conveyed and secured by the deed of 1812. And, as to this property, therefore; the counsel for Waller contends that, the conveyance of 1827 should be considered as purely voluntary, and therefore, as to him, fraudulent and void.
McKinney and wife had a right to use, ‘ ‘ without being accountable” to the trustees, the property embraced in the deed of 1812. The money received was actually consumed, and therefore, though the act of conversion or consumption was not an execution of the power, it would have been difficult for the children to maintain a claim to a restitution of the money thus consumed. It does not appear, therefore, that there was any valuable consideration for the conveyance of 1827. And the fact that the deed on its face surrendered in the trustees McKinney’s life estate, the fact that he was then pressed with sundry executions — and the fact that, on the day after the date of that conveyance, he conveyed all his property of every kind, not embraced in it, to Morton, in trust for other purposes, conduce to the presumption that the deed of the 9th of April, 1827, was made for the purpose of obstructing the just demands of his bona fide creditors ; or rather, in other words, that he would not have made it, and especially that he would not have surrendered all his interest for life to his infant children, had he owed no debts as surety, which he felt it hard and perhaps unjust to his wife, whose estate he had used, to suffer to be made out of property which he thought she and her children ought to own and enjoy,
We are, therefore, of the opinion, that the children of McKinney and wife have not satisfactorily shown an equitable right to enjoin Waller in his attempt to subject to the satisfaction of his judgment, the three slaves and personal property described in the conveyance to Bodly and Clay, of the 9th of April, 1827, and which was neither embraced by the deed of 1812, nor has been shown to have been acquired in consideration of any of that trust estate,
*486 Wherefore, the decree of the Circuit Court is reversed, and the cause remanded, with instructions to perpetuate the injunction as to the slaves Tom, Bob, Harry, Lucy, Fanny, Sarah and Rachel, and the issue, if any, of the females, and to dissolve it, as to the residue of the property described in the deed of the 9th of April, 1827, And also, to allow time to make the proper parties, preparatory to a decree on the mortgage, and to maintain the injunction, in the mean time, as to the property included in the mortgage; but if the proper parties be not made within reasonable time, to dismiss the bill entirely as to Daniel Royce, without prejudice,